_____

JANE DOE, a minor, by and through her parents
and natural guardians, D. DOE and C. DOE,

                                      Plaintiffs,             DECISION AND ORDER

-vs-                                                16-CV-6594 (CJS)

EAST IRONDEQUOIT CENTRAL SCHOOL DISTRICT,
EAST IRONDEQUOIT CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION, SUSAN ALLEN, individually
and in her official capacity, JOHN ABBOT, individually
and in his official capacity, KATHY CALLON, individually
and in her official capacity, RENALDO VEGA and
PHILLIP OBERST, individually and in his official
capacity,

                                      Defendants.

_____

## APPEARANCES

For Plaintiff:             Anthony G. Sanchez
                           Sanchez Legal Group, LLC
                           301 Castle Shannon Boulevard
                           Pittsburgh, Pennsylvania 15234

                           Robert S. King
                           Law Office of Robert King, PLLC
                           19 West Main Street, Suite 250
                           Rochester, New York 14614

For the East Irondequoit
School Defendants:      James H. Cosgriff, III
                           Petrone & Petrone, P.C.
                           5500 Main Street, Suite 342
                           Williamsville, New York 14221

## INTRODUCTION

Plaintiffs maintain that Defendants discriminated against high school student Jane

Doe ("the Child") in violation of her rights under the U.S. Constitution and federal disability

statutes, and also committed various torts under New York State Law, by failing to protect

her from sexual abuse committed by a school bus driver, Renaldo Vega. Now before the Court is a motion (Docket No. [#14]) to dismiss the Amended Complaint [#13], for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1), and for failure to state a claim, pursuant to FRCP 12(b)(6), filed by all defendants except Vega ("Movants"). The motion pursuant to Rule 12(b)(6) is granted in its entirety, and all claims against Movants are dismissed with prejudice. The case will proceed as to Mr. Vega.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Amended Complaint [#13]. At all relevant times, the Child was a student at the East Irondequoit Central School District ("the School"). At all relevant times, the individual Defendants were employees of the School, in the following capacities: Susan Allen ("Allen") was the School's Superintendent; John Abbott ("Abbott") was the Deputy Superintendent; Philip Oberst ("Oberst") was an Assistant Superintendent; Kathleen Callon ("Callon") was the Transportation Director; and Vega was a bus driver.

At all relevant times the Child was "a special needs student" with an individualized education program ("IEP"). During the 2014-2015 school year, the Child attended a program at the Board of Cooperative Educational Services ("BOCES"), to which she was transported in a school bus operated by Vega. In or about December 2014, the Child was alone with Vega on the school bus at various times, as she was the only student being transported to BOCES by Vega. During that same period, Vega sexually assaulted the Child.

The Child and her parents, plaintiffs D. Doe and C. Doe, subsequently learned that in 2013, more than a year prior to the sexual assault, Vega had been arrested and charged with having "acted in a manner injurious to a child who was less than 17 years of age." As

this purportedly occurred in New York State, and from discussions during oral argument, the Court understands Plaintiffs to mean that Vega was charged, under New York Penal Law § 260.10, with "Endangering the welfare of a child." This statute provides, in pertinent part, as follows:

> A person is guilty of endangering the welfare of a child when: 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health; or 2. Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he or she fails or refuses to exercise reasonable diligence in the control of such child to prevent him or her from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act. . . . Endangering the welfare of a child is a class A misdemeanor.

N.Y. Penal Law § 260.10 (McKinney). As the foregoing quotation indicates, Penal Law § 260.10 potentially covers a wide spectrum of injurious conduct. For example, the crime of endangering the welfare of a child has been found to include such varied conduct as "inappropriate physical contact," *People v. Toft*, 156 A.D.3d 1234, 1235 (3d Dept. 2017), handing a child a lit cigarette for him to smoke, *see, People v. Cardona*, 42 Misc.3d 194, 973 N.Y.S.2d 915 (Crim. Ct., City of New York, Bronx County 2013), or selling fireworks to a child, *see, People v. Suquisupa*, 167 Misc.2d 109, 637 N.Y.S.2d 302, 304 (Supreme Court, Bronx County 1996). One can also violate the statute by failing to prevent one's own child from becoming a "juvenile delinquent." Penal Law § 260.10(2).

A defendant can be guilty of the crime even if his conduct was not directed at a child, and even if a child was not actually harmed. *See, e.g., People v. Mineccia*, 55 Misc. 3d 1219(A), 58 N.Y.S.3d 875 (N.Y. Co. Ct. 2017) ("Defendant argues that no harm actually

came to the child, however, actual harm to the child need not result nor does defendant's conduct need not be specifically directed at a child (*see* Pattern Criminal Jury Instructions, Penal Law § 260.10[1] ).”); *see also, People v. Mitchell*, 24 Misc. 3d 1249(A), 899 N.Y.S.2d 62 (Sup. Ct. 2009) (“[T]he People must allege facts that establish reasonable cause to believe that defendant acted in a manner which was likely to result in harm to a child and that defendant was aware that the conduct might likely result in harm to the child, whether the conduct was directed at the child or not.”) (citation omitted).  Moreover, as noted above, “[t]he harm to which the statute refers [under sub-section 1 may be] “physical, mental or moral[.]” *People v. Noce*, 24 Misc. 3d 1202(A), 889 N.Y.S.2d 883 (Dist. Ct. 2009).

The Amended Complaint does not indicate the particular sub-section of the statute under which Vega was charged, nor does it indicate the factual basis of the charge against Vega.  That is, the pleading does not allege how Vega allegedly endangered the welfare of a child.  For example, the pleading does not indicate that Vega's alleged misconduct was sexual in nature.  The pleading does not allege any particular characteristic, such as the sex, of the alleged victim.  The pleading also does not allege that Vega was ever convicted of the crime.  During oral argument of the subject motion to dismiss, counsel for the East Irondequoit School District represented, as an officer of the Court, and without dispute from Plaintiff's counsel,[1] that the charge was eventually dismissed and the case was sealed.  However, for purposes of the instant motion to dismiss, the Court merely notes that no facts have been alleged concerning the nature of the accusation against Vega in 2013, other than that it involved some unspecified type of action that could have resulted in harm to a child less than seventeen years of age.

---

[1]The Court does not treat this as an admission.  Rather, it appears that Plaintiff's counsel simply does not know what the charge was, or how it was disposed of.

The Amended Complaint indicates that school officials were notified that Vega had been charged under Penal Law § 260.10, and that they temporarily suspended his employment. However, the allegations do not indicate which school employee(s), specifically, had notice of the criminal charge, or what, if anything, they knew about the underlying facts. On this point, the pleading states:

> On or before October 17, 2013, Vega's conduct was reported to all or some of the School Defendants and the Board. On or about October 17, 2013, the Board and School Defendants temporarily placed Vega on administrative leave.

Amended Complaint [#13] at ¶ ¶ 72-73. The pleading further indicates that on or about October 24, 2013, the School District "reinstated" Vega's employment, while the criminal charge was still pending against him.[2] The pleading contends that School Officials failed to perform any type of investigation of the circumstances involved in the criminal accusation against Vega, before allowing him to return to work.

Although Plaintiffs presently have no idea what such an investigation would have discovered, it is one theory of their case that the School District's alleged failure to investigate is the cause of the injury to the child more than a year later. Plaintiffs maintain, in that regard, that the mere fact of that Vega was charged with "endangering the welfare of a child" should have provided notice that he was likely to commit a sexual assault against a female student. For example, the Complaint asserts that due to having received notice of the criminal charge, "[t]he Board and School District knew or should have known that Vega had a propensity for engaging in conduct such as inappropriately touching, harassing and sexually assaulting minors and females."[3]

---

[2]Amended Complaint [#13] at ¶ ¶ 87-88.

[3]Complaint [#1] at ¶ 261.

On August 25, 2016, Plaintiffs commenced this action. The Complaint [#1] purported to assert the following thirteen causes of action: I) "Section 1983 - Violation of Due Process and Equal Protection," asserted against the School District and Board of Education; II) "§ 1983 - Violation of the Constitutional Right to Bodily Integrity," asserted against Allen, Abbott, Oberst, Callon and Vega; III) "§ 1983 - Improper Hiring, Training, Retention, and Supervision," asserted against the School District, Board of Education, Allen, Abbott, Oberst and Callon; IV) "Title IX - Harassment," asserted against the School District; V) "Title IX - Failure to Remedy Harassment," asserted against the School District; VI) "[Section 504 of the] Rehabilitation Act - Discrimination on Basis of Disability," asserted against the School District; VII) "[Americans with Disabilities Act ("]ADA["])] - Discrimination on the Basis of Disability," asserted against the School District; VIII) "Assault and Battery," asserted against Vega; IX) "Intentional Infliction of Emotional Distress," asserted against Vega; X) "Negligent Infliction of Emotional Distress," asserted against Vega; XI) § 1983 - Violation of state rights," asserted against the School District, Allen, Abbott, Oberst and Callon; XII) "Negligent Infliction of Emotional Distress," asserted against the School District, the Board of Education, Allen, Abbott, Oberst and Callon; XIII) "Negligence," asserted against the School District, the Board of Education, Allen, Abbott, Oberst and Callon; and XIV) "Respondeat Superior Liability" against the School District and the Board of Education. The Complaint demanded money damages, both compensatory and punitive.

On October 5, 2016, Movants filed a joint motion [#10] to dismiss the Complaint, pursuant to Rules 8(a)(2), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The motion asserted, for example, that many of the causes of action were alleged against the school defendants as a group, without specifying what any particular defendant allegedly had done to cause injury. The motion further indicated that the pleading failed to allege the nature of the criminal complaint against Vega, and also

failed to indicate which of the individual defendants supposedly had notice of the complaint. The motion also objected to the fact that "the specific dates on which the alleged acts occurred [were] not specified."[4]

More specifically, the motion to dismiss contended that the Complaint failed to state any claim under Section 1983 for various reasons, including that there can be no § 1983 claim for money damages against a school board or its members in their official capacities; that school districts cannot be liable under § 1983 on a theory of *respondeat superior*; that the pleading does not assert a custom, policy or practice sufficient to impose municipal liability under § 1983; that the pleading fails to allege personal involvement of the individual defendants in the alleged constitutional violations; and that the pleading does not indicate that the Child was treated disparately. The motion also maintained that the Complaint failed to state any claim under Title IX, for reasons including that the movants had not participated in, and did not have actual notice of, the alleged discrimination committed by Vega against the Child. The motion further indicated that the Complaint failed to state a claim under the Rehabilitation Act or the ADA, for various reasons, including that there is no individual liability under the ADA; that the Child was not a qualified individual with a disability merely because she had an educational IEP; and that Plaintiffs had failed to exhaust their administrative remedies before commencing the action, thereby depriving this Court of subject-matter jurisdiction over those claims. The motion further contended that the state-law claims for negligent infliction of emotional distress, negligence, and respondeat superior liability had to be dismissed, for failure to plausibly state cognizable claims. The motion also requested that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims, if it found that all federal claims should be dismissed.

_____

[4]Docket No. [#10-3] at p. 8.

In response to the motion to dismiss, on October 21, 2016, Plaintiffs filed an Amended Complaint [#13] as of right, pursuant to Fed.R.Civ.P. 15(a)(1)(B). The Amended Complaint [#13] purports to assert the same fourteen causes of action contained in the original Complaint: I) "Section 1983 - Violation of Due Process and Equal Protection," asserted against the School District and Board of Education; II) "§ 1983 - Violation of the Constitutional Right to Bodily Integrity," asserted against Allen, Abbott, Oberst, Callon and Vega; III) "§ 1983 - Improper Hiring, Training, Retention, and Supervision," asserted against the School District, Board of Education, Allen, Abbott, Oberst and Callon; IV) "Title IX - Harassment," asserted against the School District; V) "Title IX - Failure to Remedy Harassment," asserted against the School District; VI) "[Section 504 of the] Rehabilitation Act - Discriminationon Basis of Disability," asserted against the School District; VII) "[Americans with Disabilities Act ("]ADA["])] - Discrimination on the Basis of Disability," asserted against the School District; VIII) "Assault and Battery," asserted against Vega; IX) "Intentional Infliction of Emotional Distress," asserted against Vega; X) "Negligent Infliction of Emotional Distress," asserted against Vega; XI) § 1983 - Violation of state rights," asserted against the School District, Allen, Abbott, Oberst and Callon; XII) "Negligent Infliction of Emotional Distress," asserted against the School District, the Board of Education, Allen, Abbott, Oberst and Callon; XIII) "Negligence," asserted against the School District, the Board of Education, Allen, Abbott, Oberst and Callon; and XIV) "Respondeat Superior Liability" against the School District and the Board of Education.

The Amended Complaint [#13] is generally identical to the Complaint [#1]. Based upon its visual comparison of the two pleadings, the main differences in the Amended Complaint appear to be the following: 1) whereas the Complaint merely alleged that "Vega's [alleged criminal] conduct [in 2013] was reported to all or some of the School Defendants and the Board" without specifying when the report was made, the Amended

Complaint alleges that "[o]n or before October 17, 2013, Vega's [alleged criminal] conduct was reported to all or some of the School Defendants and the Board"[5]; 2) in several paragraphs concerning the defendants' alleged failure to investigate the criminal charge against Vega in 2013, the Amended Complaint has added the words, "Sometime on or after October 17, 2013";[6] and 3) the Amended Complaint adds a new paragraph 89, which states: "Vega was reinstated before he was qualified to return to work as a bus driver by the New York State Department of Motor Vehicles."

On November 11, 2016, Movants filed the subject motion [#14] to dismiss the Amended Complaint. This motion essentially raises the same arguments that movants directed at the original Complaint. On December 21, 2016, Plaintiffs filed their opposition papers [#18]. On January 5, 2017, Movants filed their reply [#20].

On March 30, 2017, counsel for Plaintiffs and Movants appeared before the undersigned for oral argument. During oral argument, the Court and counsel had a lengthy discussion as to whether Plaintiffs would be able to establish liability against Defendants, given the fact that they were unaware of the specific factual basis for the criminal charge against Vega, and the fact that the case against Vega had, apparently, been dismissed and sealed. In response to the Court's questions, Plaintiffs' counsel repeatedly asserted that the mere fact that an allegation was made against Vega, regardless of what it was or whether it was ultimately proven, should have caused the school district to take action that would have prevented the sexual assault against the child. The Court indicated that it did not agree with counsel's argument.

Nevertheless, following oral argument, the Court granted Plaintiffs' counsel an opportunity to file a supplemental memorandum of law. In particular, Plaintiff's counsel

---

[5]Complaint [#1] at ¶ 72, Amended Complaint [#13] at ¶ 72.

[6]Amended Complaint [#13] at ¶ ¶ 74-86.

requested an opportunity to submit supplemental research on the question of whether the defendant school district could be liable under the circumstances of this case, even if the circumstances of the criminal charge against Vega turned out to be different than the sexual abuse committed against the plaintiff Child. The Court gave Plaintiffs until April 20, 2017, to file a supplement to his memorandum of law on this point, and directed Movants to file any response on or before May 4, 2017.

On April 19, 2017, Plaintiffs filed a supplemental memorandum of law [#22]. However, Plaintiffs submission went far beyond merely supplementing their previous submission on the specific point that counsel requested. Rather, the submission also included a request to file a Second Amended Complaint. Strangely, considering that this was Plaintiffs' third attempt to plead the same causes of action, the proposed Second Amended Complaint contained almost one hundred more paragraphs than the two prior pleadings.

On May 4, 2017, Movants filed a response [#24] to Plaintiff's supplemental memorandum, and an opposition [#25] to Plaintiff's motion to amend.

DISCUSSION

Plaintiffs' Motion to File a Second Amended Complaint is Denied

At oral argument the Court granted Plaintiffs' request for a limited opportunity to supplement their papers on a particular legal issue. The Court did not, however, grant Plaintiffs leave to file an additional motion to amend, nor did Plaintiff's request such leave at that time. Rather, Plaintiffs merely combined this request with their supplemental submission, without the Court's prior consent.

Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires." However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing

party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). Here, there are several such good reasons why the motion to amend ought to be denied.

Preliminarily, the Court notes that Plaintiffs' motion does not comply with Rule 15(b) of the Local Rules of Civil Procedure, which states:

> Unless the movant is proceeding *pro se*, the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing "redline" function or other similar markings that are visible in both electronic and paper format.

Plaintiffs' proposed Second Amended Complaint is almost one hundred paragraphs longer than the two prior versions, but neither the electronic version nor paper version of the proposed pleading distinguishes the new allegations from the old. Consequently, the Court and opposing counsel have been required to visually compare the pleadings, which is not acceptable.

The Court notes, on this same point, that Plaintiffs also failed to utilize "a word processing 'redline' function or other similar markings" when they previously filed the Amended Complaint [#13]. Upon first reviewing the Amended Complaint, the Court consulted Local Rule 15, and found that it was somewhat ambiguous as to whether litigants are required to comply with Rule 15(b) when filing an amended pleading "as of right." The Court believes that they are, even though Local Rule 15, by its strict terms, refers to situations in which a litigant has filed a "motion" to amend. Nevertheless, the Court was prepared to overlook that point with regard to the Amended Complaint, even though it required the Court to visually compare the Amended Complaint with the Amended Complaint, paragraph by paragraph, to identify the differences.

It is crystal clear, however, that Local Rule 15(b) applies to Plaintiffs' motion to file a Second Amended Complaint, and because Plaintiffs did not comply with that rule, the motion may be denied for that reason alone.

Beyond that, the motion to file a Second Amended Complaint is untimely because it was filed outside of the deadlines set by the Court's Motion Scheduling Order [#15]. Specifically, the Court ordered Plaintiffs to file and serve any response to the Motion to Dismiss [#14] on or before December 21, 2016. Plaintiffs could have requested permission to file a further amendment by that date, but they did not do so. Although the Court subsequently granted Plaintiff additional time to file a supplemental brief on a particular legal issue following oral argument, it did not otherwise extend the briefing schedule.

Additionally, the Court sees no reason why many of the proposed additional factual allegations -- such as those concerning the specifics of the sexual abuse committed by Vega -- could not have been included in the two prior versions of the Complaint. In any event, it is not as if such allegations are necessary to oppose the motion to dismiss, since Defendants have not argued that there are insufficient allegations in the pleading concerning what Vega did to the plaintiff Child.

Finally, the Court fails to see how the proposed new allegations are plausible. Specifically, the most noteworthy additions to the proposed Second Amended Complaint are paragraphs 76, 83-89 and 121-126, all of which now allege that Vega's arrest, in 2013, involved "conduct that was harmful to minors by threatening, harassing, physically assaulting, and committing violence and unwanted touching upon the person of minors," and that Movants were aware of that fact. These allegations are troubling, because Plaintiffs have not attempted to explain where they suddenly learned this information. Recall, that neither of the two prior pleadings purported to know the factual basis of the criminal charge against Vega in 2013, and that during oral argument, the Court and counsel spent almost an hour discussing whether Plaintiffs would be able to establish their case at trial, given the fact that they did not know the factual basis of the criminal allegation against Vega, and might never know, since the case against Vega had been dismissed and

sealed.[7]   Now suddenly, and without explanation, Plaintiffs claim that Vega's arrest involved some type of physical violence and/or unwanted touching of a child.  As an aside, the fact that Plaintiffs feel the need to add such allegations is inconsistent with their assertion, at oral argument, that the factual basis for the 2013 criminal charge against Vega is irrelevant to Movants' liability.  Nevertheless, considering all of the aforementioned circumstances, and even assuming that the proposed new allegations somehow comply with Rule 11(b), the Court finds that the new allegations are merely bald assertions, without any apparent basis in fact, and are therefore not "plausible."

For all of the foregoing reasons, the motion to file a Second Amended Complaint is denied.  Plaintiffs' action must therefore stand or fall on the legal sufficiency of the Amended Complaint [#13], which the Court will now proceed to consider.

Motion to Dismiss for Lack of Subject Matter Jurisdiction

Movants contend that the Court lacks subject matter jurisdiction over the claims brought pursuant to the ADA and Rehabilitation Act.  Specifically, Movants contend that dismissal of those claims is required under Rule 12(b)(1), because Plaintiffs did not exhaust their administrative remedies before commencing this action:

> Plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies [under the Individuals With Disabilities in Education Act (IDEA)] before filing suit in Federal Court, even if their claims are formulated under a statute other than IDEA, such as the ADA or the Rehabilitation Act and if the plaintiff fails to meet the exhaustion requirement, the Court lacks subject-matter jurisdiction.[8]

---

[7] *See, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) ("As the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" or speculation, *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937, and Plaintiff himself concedes that he is not in possession of facts to meet the relevant pleading standard, amendment of the looting allegation would also be futile.").

[8] Movants' Memo of Law [#14-4] at p. 17.

Movants' argument on this point is not well developed, but it seems to refer to the well-settled principal that a litigant who intends to bring a claim in federal court seeking relief that is *available* under IDEA must first exhaust his administrative remedies under that statute, even if he is not attempting to sue under IDEA. *See, e.g., Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 246, 245 (2d Cir. 2008) (Indicating that plaintiffs must exhaust their remedies under IDEA "not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint," and that failure to do so "deprives the court of subject matter jurisdiction.") (emphasis in original).

Significantly, this IDEA exhaustion requirement applies to claims under the ADA and Section 504 which involve the education of disabled children. *See, L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 F. App'x 56, 57 (2d Cir. Mar. 4, 2016) ("[I]f the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required unless plaintiffs demonstrate that their failure to exhaust should be excused.").

Movants maintain that the relief that Plaintiffs are seeking under the ADA and § 504 of the Rehabilitation Act is available under IDEA, but that Plaintiffs did not exhaust their administrative remedies under IDEA, which therefore deprives the Court of subject matter jurisdiction over the ADA claim and Rehabilitation Act claim.

Plaintiffs respond  that they were not required to exhaust administrative remedies under IDEA, because, *inter alia*, such exhaustion would have been futile. *See, Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d at 249  ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.").

The Court agrees with Plaintiffs on this point, and finds that exhaustion of administrative remedies under IDEA was not required.  In that regard, as far as this Court

is aware, all of the courts that have considered this issue have found that IDEA does not pertain to situations such as those presented in this case, involving a physical assault against a student who happens to have an educational disability. *See*, *F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014) (Denying motion to dismiss § 1983 claim for failure to exhaust administrative remedies under IDEA, stating: "We are not persuaded that Appellants' alleged injuries under the 42 U.S.C. § 1983 claims relate to the provision of a FAPE. As we discussed above, Appellants allege that F.H. was verbally, physically, and even sexually abused by his aides. These injuries are non-educational in nature and cannot be remedied through the administrative process."); *see also, McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 (7th Cir. 2004) (After gym teacher disregarded disabled student's IEP and forced him to exercise, causing kidney damage, the Seventh Circuit found that such injury was not covered by IDEA, stating: "The nature of his claim is not educational; no change to his IEP could remedy, even in part, the damage done to Eron's body. . . . After closely examining the 'theory behind the grievance' in Eron's complaint, we are convinced that it would be futile for Eron to exhaust the administrative process under the circumstances of this case because IDEA does not provide a remedy for his alleged injuries, which are non-educational in nature."); *Smith v. Port Hope Sch. Dist.*, No. 05-10267, 2007 WL 2261419, at *9 (E.D. Mich. Aug. 6, 2007) (Dismissing IDEA cause of action for failure to state a claim: "The plaintiffs allege in count three of the amended complaint that the school district defendants' failure to supervise students and train personnel, which led to the assaults on Derek, violated Derek's right to a free appropriate public education (FAPE) guaranteed to him by the [IDEA]. . . . [However,] assaults bear no relation to Derek's education plan, did not constitute school-imposed discipline, and do not fall within the purview of the IDEA. As the district court explained in *Franklin v. Frid*, 7 F.Supp.2d 920 (W.D.Mich.1998), '[a] disabled child

who is sexually abused or severely beaten by a teacher or school official --acts having no relationship to the appropriate education of a disabled child-- would not come within the purview of the IDEA.'"); *M.C. ex rel. R.C. v. Perkiomen Valley Sch. Dist.*, No. CIV.A. 14-5707, 2015 WL 2231915, at *6 (E.D. Pa. May 11, 2015) ("M.C.'s claims are not educational in nature but are more akin to a personal injury claim incapable of remedy by the IDEA administrative process. Harry sexually assaulted M.C. . . . While Harry's assault and the District's subsequent inaction undoubtedly occurred in the educational setting (i.e. the school building), we do not find that the claims "relate" to M .C.'s educational progress or program. She did not experience any "educational shortfalls" that could be corrected by educational professionals in the IDEA process. The "genesis" of her claims is not related to her education but rather a sexual assault and subsequent inaction by the District."); *Tristan v. Socorro Indep. Sch. Dist.*, 902 F. Supp.2d 870, 873, 876, 878 (W.D. Tex. 2012) ("Brito[, a middle school English teacher,] grabbed [a disabled student,] E.A.T.[,] by the back of the neck and forcefully slammed E.A.T's head onto a desk. . . . [Brito] later pled guilty to the criminal offense of causing injury to a child. . . . The [Plaintiffs' §] 1983 claims are not subject to exhaustion [under IDEA] because they arise from an incident unrelated to the provision of educational services, and seek relief for non-educational injuries which cannot be remedied through the IDEA. . . . [T]he assault by Brito cannot be related to any attempted educational program. . . . [T]he IDEA provides no protection against assault by a teacher, nor does it provide a remedy for the mental and physical injuries E.A.T. allegedly suffered. The [Plaintiffs] seek, among other things, punitive damages and reimbursement for E.A.T.'s substantial medical expenses. These damages are not available under the IDEA, which generally provides only prospective educational remedies.") (citations and internal quotation marks omitted).

Consequently, Movants' request to dismiss the ADA/Rehabilitation Act claims pursuant to Fed.R.Civ.P. 12(b)(1) is denied.

<u>Motion to Dismiss for Failure to State a Claim</u>

Movants have alternatively moved to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6). The standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[9] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a

---

[9]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

> complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

Furthermore, in order to state plausible claims where a plaintiff is suing multiple defendants, the complaint must sufficiently explain what each defendant allegedly did. *See, Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did [to the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."); *see also, Griffin v. Milwaukee Cty.*, 369 F. App'x 741, 743 (7th Cir. 2010) (Complaint did "not comply with Rule 8," where it was drafted in a way that "made it impossible for the district court to identify the specific allegations against each defendant and therefore impossible to determine whether there are potential claims against any of them."). On this point, another court in this Circuit recently stated:

> At a minimum, the complaint must give each defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant. *The standard cannot, however, be satisfied by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.* A laundry list of potentially actionable conduct, without specification of any particular activities by any particular defendant, cannot withstand a motion to dismiss.

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2017 WL 696126, at *7 (S.D.N.Y. Feb. 15, 2017) (emphasis added; citations and internal quotation marks omitted).

With these general pleading requirements in mind, the Court will turn to the specific causes of action.

<u>Section 1983</u>

Causes of Action I, II, III and IX are brought pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted). Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted).

*Claims Against the School Board and Official Capacity Claims*

Movants contend that the § 1983 claims against the School Board, and the § 1983 official-capacity claims against Allen, Abbott, Oberst and Callon, must be dismissed. In

that regard, Movants maintain that claims for money damages against school boards are not actionable,[10] and that the official-capacity claims against Allen, Abbott, Oberst and Callon are merely duplicative of the claims against the School District. Plaintiffs oppose these arguments.

The Court finds that the School Board is subject to an action for money damages, contrary to what Movants argue. In that regard, Movants rely upon *Bliss v. Rochester City School District*, 196 F.Supp. 2d 314, 337 (W.D.N.Y. 2002), which in turn relied upon other caselaw that pre-dated, and was overruled by, the Supreme Court's decision in *Monell v. Dep't of Soc Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ("*Monell*"). *See, e.g., Ruslander v. City of Buffalo*, 2003 WL 23350117 at *2, n. 7 (W.D.N.Y. Aug. 22, 2003) ("The Board [of Education] contends that it is not subject to damages under section 1983. This Court disagrees – although the issue appears to be a source of confusion, which continues to propagate.") (collecting cases); *see also, Bowen v. Baldwin Union Free Sch. Dist.*, No. CV156829JMAGRB, 2017 WL 4083553, at *9, n. 5 (E.D.N.Y. Aug. 23, 2017) ("Some courts in this Circuit have concluded that school boards are not proper defendants in a suit for damages under § 1983. However, the overwhelming majority of cases, some of which are cited above, apply § 1983 against school boards in actions for damages. The undersigned finds the latter cases more persuasive, if not mandatory under *Monell*.") (citations omitted; collecting cases), report and recommendation adopted, No. 15CV6829JMAGRB, 2017 WL 4083573 (E.D.N.Y. Sept. 14, 2017). Consequently, Movants' request to dismiss the § 1983 claims against the School Board, on the grounds that school boards are not subject to damage suits under § 1983, is denied.

---

[10]Movant's Memo of Law [#14-4] at p. 3 ("There is no cause of action under 42 U.S.C. § 1983 for damages against a school board or its members in their official capacities." *Bliss v. Rochester City School District*, 196 F.Supp.2d 314, 337 (W.D.N.Y. 2002)").

However, the Court agrees with Movants that the claims against Allen, Abbott, Oberst and Callon in their official capacities are duplicative of the claims against the School District. *See, e.g., Castanza v. Town of Brookhaven*, 700 F. Supp.2d 277, 283–84 (E.D.N.Y. 2010) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." [citing *Monell]*. "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Escobar v. City of New York*, No. 05 Civ. 3030, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007) (citations and quotations omitted)").  The § 1983 claims against Allen, Abbott, Oberst and Callon in their official capacities (as administrators of the School District) are redundant of the claims against the School District, and are therefore dismissed.

> *The Amended Complaint fails to plead § 1983 personal involvement/supervisory liability against Allen, Abbott, Oberst and Callon*

In the instant case, Vega is alleged to have committed the underlying sexual assault against the child, and the individual Movants – Allen, Abbott, Oberst and Callon –  are being sued in their individual capacities because they were Vega's supervisors.  However, these individual Movants contend that the Amended Complaint [#13] does not adequately plead their personal involvement in the § 1983 claims.

To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right.  Such individual liability may include supervisory liability.  It is clear that

liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant. Instead, because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Thus, each Government official is only liable for his or her own misconduct.

*Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citations and internal quotation marks omitted).

Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, cited earlier, the Second Circuit stated the law concerning supervisory liability as follows:

The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring. In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.

*Raspardo v. Carlone*, 770 F.3d at 116 (*quoting Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("*Colon*")). Since the the Supreme Court's ruling in *Ashcroft v. Iqbal*, there has been speculation by district courts in this Circuit as to whether all five of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at *17 (2d Cir. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases). The Second Circuit has not yet addressed the issue. *See, Raspardo v. Carlone*, 770 F.3d at 117 ("We have not yet

determined the contours of the supervisory liability test, including the gross negligence prong, after *Iqbal*.").  Accordingly, in the absence of contrary direction from the Second Circuit, the Court will continue to apply all of the *Colon* factors.

Plaintiffs contend that Allen, Abbott, Oberst and Callon have individual supervisory liability under § 1983, based upon the third and fifth *Colon* factors set forth above.  That is, Plaintiffs contend that these defendants "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance such a policy or custom," and/or that they were "grossly negligent in supervising" Vega.[11]

With regard to the third *Colon* factor, Plaintiffs allege that the individual defendants, "through their deliberate choices, created the policies under which the unconstitutional practices occurred."  Courts in this Circuit recognize

> at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken.

*Newton v. City of New York*, 566 F. Supp.2d 256, 271 (S.D.N.Y. 2008) (footnotes omitted). The Amended Complaint purports to rely upon the second type of policy.[12]

Accordingly, whether Allen, Abbott, Oberst and Callon have potential supervisory liability under the third *Colon* factor depends, first, upon whether they were "policymakers" in the "area in which the action was taken" -- involving supervision of school bus drivers;

---

[11] *See*, Pl. Memo of Law [#18] at p. 8 ("[T]he individual School Defendants, through their deliberate choices, created the policies under which the unconstitutional practices occurred and participated in the violations, and were not only grossly negligent in supervising Vega, they failed to supervise him at all.").

[12] In any event, there is no indication that the child's injuries were caused by an "officially promulgated policy."  To the contrary, the pleading contends that the individual movants failed to follow the relevant policies that had been officially promulgated by the School District. *See, e.g.,* Amended Complaint [#13] at ¶ 140 ("Vega's acts were the reasonably foreseeable results of Defendants' who acted outside of established school policy and returned Vega to his regular schedule having known the aforementioned facts.").

second, on whether they were actually involved in the decision to allow Vega to continue driving after the criminal charge was made against him; and third, on whether any "policy" decision he or she made was the proximate cause of the child's injuries.

As for whether Allen, Abbott, Oberst and Callon were "policymakers" in the "area in which the action was taken," the Amended Complaint claims, using the same boilerplate language as to each defendant, that each "had the power and authority to make decisions and implement actions that constituted the policy of the School District."[13]  Further, as to whether Allen, Abbott, Oberst and Callon were involved in the "action" that permitted Vega to return to work, the Amended Complaint baldly asserts that each exercised his or her authority as a policymaker for the School District to make the decision to allow Vega to return to work, knowing that Vega had been accused of committing a crime against a minor.

However, the Court finds that such allegations do not plausibly state supervisory liability claims against Allen, Abbott, Oberst or Callon under the third *Colon* factor.  As already noted, the allegations that Allen, Abbott, Oberst and Callon had policymaking authority for the School District are merely bare assertions, unsupported by any facts. While it is certainly possible that at least some of these defendants had policymaking authority in the area of transportation/school bus drivers, the pleading offers no particulars, and the Court can only speculate.

This deficiency runs throughout the Amended Complaint, which consistently lumps all of the individual Movants together without specifying who did what. *See, e.g.*, Amended Complaint [#13] at ¶ 75 ("Sometime on or after October 17, 2013, the Board and School Defendants deliberately chose not to interview the victim of Vega's conduct."); ¶ 87 ("On or about October 24, 2013, the Board and School Defendants reinstated Vega as an

---

[13]Amended Complaint [#13] at ¶ ¶ 11, 15, 19 & 23.

employee and bus driver for the School District.").

Furthermore, while it seems logical to believe that at least some of these high-ranking defendants might have been involved in decisions concerning bus drivers generally, and in the decision concerning Vega specifically, the pleading offers no facts plausibly suggesting that any one of them actually was involved in the decision to allow Vega to return to work in September 2013. The pleading offers no reason to believe that the decision was actually made by Allen, Abbott, Oberst or Callon, as opposed to, say, any one of them by himself or herself, or the School Board.[14] Because no facts are offered about how the decision was actually made, the pleading seems to imply that the decision to allow Vega to return to work was made jointly by all four of the administrator defendants, but that is speculative.

Without such facts, it appears that the Amended Complaint names Allen, Abbott, Oberst and Callon as defendants because they hold prominent positions of authority within the School District, which is not a sufficient basis to establish supervisory liability under § 1983. *See, e.g., Atkins v. Cty. of Orange*, 251 F. Supp.2d 1225, 1233 (S.D.N.Y. 2003) ("It is well established that plaintiffs cannot bring a § 1983 claim against individuals based solely on their supervisory capacity or their high positions of authority."); *see also, Casey v. Brockley*, No. 913CV01271DNHTWD, 2018 WL 1399244, at *7 (N.D.N.Y. Feb. 16, 2018) ("Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement."), report and recommendation adopted, No. 913CV1271DNHTWD, 2018 WL 1393787 (N.D.N.Y. Mar. 19, 2018); *Jones v. Annucci*, No. 16-CV-3516 (KMK), 2018 WL 910594, at *10 (S.D.N.Y. Feb. 14, 2018) ("[T]he conclusory statement that Griffin 'had knowledge' of Collado's policy and 'sanctioned it,' absent more

---

[14]As Transportation Director, Callon presumably had some involvement in decisions concerning bus drivers, but the pleading does not plead facts plausibly indicating that she actually had policymaking authority, or that she was involved in the specific decision concerning Vega.

factual allegations regarding what Griffin knew or how he sanctioned the policy, does not plausibly allege Griffin's personal involvement."); *Ochoa v. Bratton*, No. 16-CV-2852 (JGK), 2017 WL 5900552, at *3 (S.D.N.Y. Nov. 28, 2017) ("The [complaint] contains no factual allegations plausibly suggesting that Bratton, personally, was grossly negligent in supervising or training the Task Force, or was otherwise personally involved in any failure to train. The plaintiff's conclusory allegations that, as the New York City Police Commissioner, Bratton was responsible for training and supervising the Task Force—and was therefore negligent for its misdeeds, if any—does not suffice to state a claim against Bratton.").

Moreover, even if the Amended Complaint plausibly pleaded that any one of these individual defendants actually made the policy decision to allow Vega to return to work, it nevertheless fails to plausibly plead the necessary proximate causation between such decision and the alleged constitutional deprivation (the sexual assault committed by Vega). In that regard, the pleading asserts that the decision to allow Vega to return to work led to the sexual assault of the child more than a year later. But even assuming that each of the individual defendants was aware that an accusation had been made that Vega committed the crime of Endangering the Welfare of a Child, the pleading offers no basis to conclude that the accusation was true, or that Movants believed it to be true. Further, the pleading offers no details about the alleged 2013 crime to logically connect it to Vega's subsequent sexual abuse of the plaintiff Child. For example, the Amended Complaint gives no indication that the criminal allegation against Vega involved physical contact with a child, let alone sexual misconduct.

As the Court noted during oral argument, Penal Law § 260.10 potentially covers a wide spectrum of injurious conduct. The Court also notes, from its experience as a prosecutor and judge, that if Vega's alleged crime in 2013 involved sexual abuse of a child,

as Plaintiffs want the Court to infer, then it is unlikely that he would have been charged solely with violating Penal Law § 260.10, as opposed to a crime specifically involving sexual misconduct, such as "Forcible touching," Penal Law § 130.52, or "Sexual Abuse in the Third Degree," Penal Law § 130.55.

Plaintiffs nevertheless seem to assert that the mere fact that an accusation was made against Vega under Penal Law § 260.10 establishes proximate causation between the decision to allow him to return to work and any type of crime against a child that Vega might later commit. The Court does not agree. *See, e.g., Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *16 (S.D.N.Y. Mar. 7, 2016) ("Where acts of third parties are involved, which will generally be the case in section 1983 claims where a supervisor's liability is premised only on her creation of a 'policy or custom,' the supervisor may be held liable for those consequences attributable to reasonably foreseeable intervening forces. Thus, if the constitutional deprivation at issue was not a foreseeable consequence of any alleged policy or custom, or the deprivation was caused by some unforeseeable intervening event, plaintiffs have not stated a plausible claim against a supervisory defendant."), on reconsideration in part, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016). In sum, the Amended Complaint does not plausibly plead § 1983 supervisory liability against Allen, Abbot, Oberst or Callon under the third *Colon* factor.

This leaves the question of whether the Amended Complaint plausibly pleads that Allen, Abbott, Oberst and/or Callon have supervisory liability under the fourth *Colon* factor, by virtue of having been grossly negligent in supervising Vega. In that regard,

> "gross negligence" denotes a higher degree of culpability than mere negligence. It is the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.

*Raspardo v. Carlone*, 770 F.3d at 116 (citations and internal quotation marks omitted).

Here, once again, the pleading baldly asserts that each of the individual defendants was responsible for supervising bus drivers in general, and Vega in particular, but the claim is speculative. Moreover, even if the Court assumes that fact, and if it further assumes that each of the individual Movants had notice of the criminal accusation against Vega (which, again, the pleading does not plausibly allege), such facts do not establish gross negligence in supervising Vega, since the pleading does not show that the individual Movants "had reason to know of facts creating a high degree of risk of harm to another." *See, e.g., Eldridge v. Kenney*, No. 11-CV-6459-FPG, 2014 WL 2717982, at *2 (W.D.N.Y. June 16, 2014) ("Plaintiff recites the fourth *Colon* factor by stating that the Sheriff was 'grossly negligent in managing subordinates ... by failing to adequately train, supervise, and in any other way direct or control officers in the exercise of their police duties and functions.' That statement, devoid of any factual support, contains nothing more than conclusory statements and formulaic recitations of the cause of action, which the Supreme Court has deemed to be insufficient."). As already discussed, the subject pleading does not purport to allege the specific nature of the criminal accusation against Vega, nor does it indicate that the individual defendants had reason to think that the accusation was true. The pleading also does not indicate that Vega was convicted of the charge.

Rather, as discussed earlier, Plaintiffs maintain that the mere fact that an accusation (involving the endangerment of child's physical, mental or moral well-being in some unspecified way) was made against Vega is sufficient to establish that the individual movants were grossly negligent in allowing him to return to work, where he would have contact with children. However, the Court does not agree that a decision by any of the individual Movants to allow Vega to return to work, despite the existence of a single unspecified and unproven accusation, would amount to gross negligence within the

meaning of the fourth *Colon* factor. *See, e.g., Law v. Cullen*, 613 F.Supp. 259, 262 (S.D.N.Y. 1985) (City of New York was not grossly negligent in supervising police officer accused of excessive force, despite the fact that five prior complaints had been lodged against the officer, where four of the charges were found to be unsubstantiated, and the remaining complaint did not involve excessive force) (Weinfeld, J.);[15] *see also, Wilson v. David*, No. 9:08-CV-618, 2010 WL 610714, at *5 (N.D.N.Y. Feb. 17, 2010) ("[T]he two prior incidents, both of which were found to be unsubstantiated, were insufficient in and of themselves to require Defendants to supervise Biegel in a different manner or to otherwise cause them to act differently than they did."); *cf., Pacheco v. City of New York*, 234 F.R.D.

---

[15]The Court's discussion of this point in *Law v. Cullen* is more fully set forth as follows:

"The Court finds that the five CCRB complaints relied upon by plaintiff do not raise an issue of fact as to the liability of the City of New York for any claimed deprivation of plaintiff's constitutional rights. The inference that plaintiff would have this Court and a jury draw from the existence of the five CCRB complaints is that in fact Officer Cullen had a propensity to use excessive force of which the City knew or should have known. However, the CCRB complaints are merely charges; and in this case, four of the five charges were found by the CCRB, after investigation and based upon available evidence, to be "unsubstantiated." While plaintiff argues that "unsubstantiated" does not mean that the charges could not have been proven, the fact remains that no finding of actual abuse or use of excessive force was ever made against Officer Cullen prior to August 1981. The fifth complaint, found substantiated, was based upon an improper search, not excessive use of force. In the absence of any substantiated charges of abuse, there is no basis for plaintiff's claim that Officer Cullen had a "propensity" to use excessive force and, hence, no basis for its claim that the City was deliberately indifferent to such a propensity. There can be no breach by the City of a duty to act, when the circumstances do not give rise, in the first instance, to any duty.

Plaintiff, in resisting the City's summary judgment motion, seeks to retry the charges brought before the CCRB in the hope that a jury will find, contrary to CCRB's investigation, that Officer Cullen did, on those four occasions spanning nine years, use excessive force. Even assuming that the civilian charges were admissible upon a trial, and sufficient to support a jury finding that Cullen used excessive force, plaintiff's reliance thereon is misplaced. A substantiation upon a trial of the charge that Officer Cullen had a propensity to use excessive force does not establish that the City failed in its duty at the time of the occurrence of the events in this case.

The City's liability depends upon whether it deliberately chose a course of action, deliberately ignored a known duty to act, or at the very least was grossly negligent. Thus, not only must a jury find that the charges were true, but also that the City knew they were true, should have known their truth, or was grossly negligent in failing to discover their truth at or before the time of the incident in question. Yet plaintiff makes no claim, nor has he provided any facts whatsoever to support a claim, that the CCRB investigatory procedures were inadequate or improper and, therefore, the City should have known, as plaintiff claims, the "truth" of the charges against Officer Cullen. The only actual knowledge the City could have had was that one substantiated and four unsubstantiated charges had been lodged against him."

*Law v. Cullen*, 613 F. Supp. at 262–63 (footnotes omitted).

29

53, 55 (E.D.N.Y. 2006) ("[I]t is doubtful whether unsubstantiated instances of any kind of misconduct can ever be used to prove a *Monell* claim.").

To the extent that Plaintiffs argue that the individual movants were nevertheless grossly negligent for failing to properly investigate the circumstances of the 2013 complaint against Vega,[16] such argument also fails because it merely assumes, or relies upon the mere possibility, that such an investigation in 2013 would have revealed that Vega had in fact sexually abused, or otherwise physically mistreated, a child, when there is no plausible factual allegation to that effect. *See, Law v. Cullen*, 613 F.Supp. at 263 ("The City's liability depends upon whether it deliberately chose a course of action, deliberately ignored a known duty to act, or at the very least was grossly negligent. Thus, not only must a jury find that the charges were true, but also that the City knew they were true, should have known their truth, or was grossly negligent in failing to discover *their truth* at or before the time of the incident in question.") (emphasis added).

Plaintiffs cannot say what the 2013 allegation against Vega was, let alone that it was true, and therefore they cannot rely upon the defendants' alleged failure to investigate the claim as proof of gross negligence. *See, e.g., Lawrence v. City of Rochester*, No. 09-CV-6078-FPG, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("The Sixth Cause of Action alleges the City had actual or constructive notice of the propensity of Defendants Ognibene and Wilson to abuse and misuse the power and authority as police officers based on other incidents and intentionally, knowingly and/or with reckless indifference disregarded or failed to investigate the prior incidents, or alternatively, recklessly, with gross indifference, and callous disregard, investigated the incidents, but failed to remedy the situation; as a result of this reckless indifference and gross negligence in disregarding

---

[16]Plaintiffs contend that on a 12(b)(6) motion the Court must accept as true the bare assertion that Movants conducted absolutely no investigation into the charge against Vega. The Court disagrees.

or failing to properly investigate the prior incidents, the City allowed Defendants Ognibene and Wilson to assault and batter, falsely imprison, and deprive him of his civil rights[.] . . . [However,] *Monell* liability does not obtain for several reasons. *First, the prior incidents or prior bad acts involving Ognibene or Wilson alleged in the Complaint are unspecified, and evidence relative to the existence of any prior incidents or bad conduct on the part of either officer is lacking. Unspecified prior conduct, in this circumstance, permits no inference that the City, with notice or knowledge of such, intentionally, knowingly, and/or with reckless indifference disregarded or failed to investigate, or investigated but failed to remedy any situations related to complaints so as to allow Defendants Ognibene and Wilson to assault and batter, falsely imprison him, and deprive him of his civil rights, or that the City had a policy, practice, or custom of failing to investigate, which encouraged the complained of constitutional violation.*") (emphasis added).

Nor, for the same reasons discussed earlier, does the Court believe that the Amended Complaint adequately pleads the necessary proximate causation between the individual Movants' alleged gross negligence (in allowing Vega to return to work) and the sexual assault committed by Vega.

For all of the foregoing reasons, the Court finds that the Amended Complaint fails to plausibly allege supervisory liability against Allen, Abbott, Oberst or Callon under the third or fourth *Colon* factors, as to any of the Plaintiffs' § 1983 claims. The § 1983 claims are therefore dismissed as against Allen, Abbott, Oberst and Callon.

*The Amended Complaint fails to plead § 1983 <u>Monell</u> liability against the School District and School Board*

Movants next contend that the Amended Complaint fails to state actionable § 1983 municipal-liability (*Monell*) claims against the School District or School Board. The First, Third and Eleventh Causes of Action in the Amended Complaint assert § 1983 claims

against the School District, and the First and Third Causes of Action also asserts § 1983 claims against the School Board. The First Cause of Action purports to state a claim for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, under theories of a "state-created danger" and "hostile environment sex discrimination." The Third Cause of Action, entitled "§ 1983 - Improper Hiring, Training, Retention and Supervision," refers to "a deprivation of civil rights," but does not claim to arise under a particular constitutional provision. The Eleventh Cause of Action, entitled "§ 1983-Violation of state rights," claims to that the School District violated the child's rights under New York's Dignity for All Students Act ("DASA").

School districts and boards of education are considered municipal entities that can be sued under § 1983. *See, e.g., Watson v. Sims*, 648 F. App'x 49, 52–53 (2d Cir. Apr. 29, 2016) (affirming grant of summary judgment on *Monell* claim asserted against board of education, on the merits), *cert. denied*, 137 S. Ct. 626 (2017); *see also*, *Dole v. Huntington Union Free Sch. Dist.*, 699 F. App'x 85, 87 (2d Cir. Nov. 1, 2017) ("A school district is a municipal entity, and as such, cannot be held liable pursuant to § 1983 solely because of the discriminatory actions of one of its employees. [Rather,] a school district can only be held liable if its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." (citations and internal quotation marks omitted).[17]

The well-settled legal principles applicable to such municipal liability claims under § 1983 are as follows:

---

[17] *See also*, *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 291 (W.D.N.Y. 2015) ("With respect to the School District and the School Board, these entities are considered persons" within the meaning of § 1983 and subject to suit under that provision. However, as municipal entities, these defendants cannot be held liable under a *respondeat superior* theory, but instead liability will attach only if a violation of right resulted from the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."), *aff'd in part, vacated in part on other grounds and remanded*, 655 F. App'x 25 (2d Cir. 2016).

A municipality is not liable for a § 1983 claim on the theory of *respondeat superior* but rather on the basis that its policies or customs inflicted the injury upon the plaintiff. To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.

A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways. The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. Plaintiff must also prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

Additionally, to establish municipal liability, it is not enough to merely identify a municipal policy, such as a decision made by a final policymaker, that is somehow related to the plaintiff's injury. Rather, the plaintiff must show that the municipality's deliberate conduct was the "moving force" behind the injury:

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Bd. of Cnty. Commis. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

*Burns v. City of Utica*, 590 F. App'x 44, 50 (2d Cir. Nov. 7, 2014) (emphasis in original). "[I]nherent in the principle that a municipality can be liable under § 1983 only where its

policies are the moving force behind the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (citations and internal quotation marks omitted).

Movants contend that the Amended Complaint fails to plead a municipal policy.[18] However, Plaintiffs respond that the decisions made by Abbott, Allen, Oberst and Callon are municipal policy as to the School District, because those individuals had policymaking authority to bind the School District. *See*, Pl. Memo of Law [#18] at p. 8 ("[T]he School District is liable for the decisions made by these defendants as those decisions represent School District policy.").   Plaintiffs also seem to assert, though not explicitly, that the decisions made by Allen, Abbot, Oberst and Callon constitute the policy of the School *Board*, though they do not explain how.   In any event, Plaintiffs describe this alleged municipal policy as a "one-time policy":

> [T]he School Defendants deliberately chose to effectuate a one-time policy to not only not protect [the child,] but to expose her to greater risk of physical assault by putting her in a situation in which she was left alone with Vega, whom the School Defendants knew had a proclivity for conduct harmful to children.[19]

Additionally, Plaintiffs contend that the School District and School Board failed to investigate the allegations against Vega, which amounts to a municipal custom or practice.[20]   Further, Plaintiffs allege that a municipal policy was created by the School District and School Board's "improper hiring, training, retention and supervision" of Vega,

---

[18]*See, e.g.*, Movants' Memo of Law [#14-4] at pp. 9, 11-12.

[19]Pl. Memo of Law [#18] at p. 11.

[20]Pl. Memo of Law [#18] at pp. 12-13.

with deliberate indifference to the child's rights.[21]  In particular, Plaintiffs contend that

> the School Defendants knew that Vega had a proclivity for harming children, had been accused of engaging in conduct harmful to children and had criminal charges [sic] filed against him for engaging in conduct harmful to children.  Consequently, in Vega's situation, the need for training was doubly obvious.

Pl. Memo of Law [#18] at pp. 17-18.

To establish *Monell* liability where a municipality is alleged to have failed to train, supervise or monitor its employee, the plaintiff must show that the municipality acted with deliberate indifference:

> Deliberate indifference is a stringent standard of fault.  Quite apart from the state of mind required to establish the underlying constitutional violation, a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice.  Thus, to proceed on a deliberate-indifference theory, a plaintiff must first establish that the need for more or better supervision to protect against constitutional violations was obvious.  This obvious need may be demonstrated through, for example, proof of repeated complaints of civil rights violations.

*Outlaw v. City of Hartford*, 884 F.3d at 372–73 (citations and internal quotation marks omitted).

It is not necessary in every case for the plaintiff to show that the municipality was aware of repeated prior incidents involving constitutional violations. *See, Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) ("While we have held that proof of a policymaker's failure to respond to repeated complaints of civil rights violations would be sufficient to establish deliberate indifference, we have never required such a showing. The

---

[21]Pl. Memo of Law [#18] at pp. 16-18.

means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing. . . . [P]laintiffs' evidence must establish only that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was "obvious," and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction.") (citations and internal quotation marks omitted). Nevertheless, "clearly it will be a rare case in which [notice of] a single prior incident suffices to hold a municipality liable" under the deliberate indifference standard. *Manville v. Town of Greece*, 892 F. Supp. 2d 469, 479 (W.D.N.Y. 2012).

The fact that a municipality was aware of a prior *allegation* of wrongdoing by a municipal employee, without more, is generally insufficient to show that the municipality had the requisite notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was "obvious." This is particularly true where the facts of the prior allegation are not before the Court. *See*, *Outlaw v. City of Hartford*, 884 F.3d at 379–80 ("The lists of the lawsuits filed and the claims sent to the City's insurer might have led to evidence from which an inference of deliberate indifference to excessive force could properly be drawn, but as noted by the district court, there was no evidence as to the facts underlying those claims or how thoroughly they were investigated by the City. The simple fact that claims were made and that some of them were settled would not permit an inference that the City was deliberately indifferent in the supervision of HPD officers with respect to the use of excessive force.").

In the instant case, for many of the same reasons already discussed, the Court finds that the Amended Complaint fails to plausibly plead a *Monell* policy, by either the School District or the School Board, that proximately caused the sexual assault by Vega. Preliminarily, as already explained, the pleading does not plausibly plead the Allen, Abbott,

Oberst or Callen were actual policymakers with regard to the subject at issue (bus drivers), or that any of them was actually involved in the decision to allow Vega to return to work in 2013. Rather, due to the absence of any supporting facts on that point, it appears that they were named as defendants, and described as policymakers, merely because they held positions of authority. Accordingly, insofar as *Monell* liability against the School Board and School District is based upon the alleged policymaking decisions by Allen, Abbott, Oberst and Callon, it is not plausibly pleaded.

However, even assuming that the pleading plausibly pleads such policy-making involvement by Allen, Abbott, Oberst or Callon, it does not plausibly plead that the decision to allow Vega to return to work was deliberately indifferent to the Child's safety or grossly negligent, or that it proximately caused the Child's injury. Again, the only information that Movants had, according to the Amended Complaint, was that Vega had been charged with Endangering the Welfare of a Child. The details of the alleged crime are unknown, and the charge was not substantiated. Accordingly, insofar as Plaintiffs are attempting to base *Monell* liability on a failure to supervise Vega, the pleading is deficient because it does not indicate that the need for more or better supervision of Vega was obvious. *See, Amnesty Am. v. Town of W. Hartford*, 361 F.3d at 127 ("[P]laintiffs must establish [the municipal defendant's] deliberate indifference by showing that the need for more or better supervision to protect against constitutional violations was obvious, but that [the municipal defendant] made no meaningful attempt to forestall or prevent the unconstitutional conduct.") (citation and internal quotation marks omitted); *see also, Doe v. City of New York*, No. 09 CIV. 9895 SAS, 2013 WL 796014, at *5 (S.D.N.Y. Mar. 4, 2013) ("Plaintiff has not plausibly alleged that the City knew or should have known of Moreno's propensity for raping or sexually assaulting women or Mata's propensity for aiding the same. . . . Plaintiff alleges that the City should have known of Mata's propensity to aid and abet sexual assault because of a

single CCRB complaint alleging verbal and physical abuse of an intoxicated woman attempting to report a crime. But that complaint did not allege rape or sexual assault, nor did it indicate that the victim's sex was relevant to Mata's misconduct. As such, it did not put the city on notice of Mata's criminal propensity."), *aff'd*, 558 F. App'x 75 (2d Cir. 2014); *Lawrence v. City of Rochester*, 2015 WL 510048 at *8 ("Unspecified prior conduct, in this circumstance, permits no inference that the City, with notice or knowledge of such, intentionally, knowingly, and/or with reckless indifference disregarded or failed to investigate, or investigated but failed to remedy any situations related to complaints so as to allow Defendants Ognibene and Wilson to assault and batter, falsely imprison him, and deprive him of his civil rights, or that the City had a policy, practice, or custom of failing to investigate, which encouraged the complained of constitutional violation."); *Leno v. Stupik*, No. 1:07-CV-163, 2008 WL 5412849, at *8 (D. Vt. Dec. 29, 2008) (Granting summary judgment on *Monell* claim, for lack of evidence of deliberate indifference, stating: "The only relevant information in Stupik's background was one prior complaint made during his six-year tenure at the City of Winooski. There is no evidence as to the nature of the complaint or whether it was sustained, but there is evidence the Winooski Chief of Police told the Barre Chief of Police there were no concerns regarding Stupik and that Stupik would make a fine police officer.").

Similarly, the pleading does not plausibly allege a municipal failure to investigate. In that regard, the allegation that the School District and School Board allowed Vega to return to work without conducting *any* type of investigation into the incident is a mere bald assertion, since the pleading gives no indication that Plaintiffs have any factual basis upon which to make that assertion.[22]  Beyond that, the pleading does not plausibly allege that

---

[22]In a footnote in their memo of law ([#18] at p. 1, n. 1), and in an attorney affirmation ([#18-1] at ¶ ¶ 5-8), Plaintiffs indicate that they are maintaining that Movants conducted no investigation, because prior to filing this action they served freedom-of-information-law ("FOIL") demands on the School District, and the responses "contained no documentation of, or reference to, or any indication that the

a better investigation would have mattered, *i.e.*, that it would have discovered evidence that Vega had a propensity to commit a sexual assault. Again, any suggestion that the criminal charge involved sexual or even physical misconduct toward a child would be speculative. Additionally, this action involves a single prior complaint (the 2013 criminal charge), and therefore it is not one of those situations where a municipality's failure to investigate numerous prior complaints suggests deliberative indifference, irrespective of whether the complaints were founded.[23]

Insofar as the Amended Complaint asserts that the School District and School Board failed to properly train Vega, it also fails to plead *Monell* liability. First, the allegations concerning the alleged failure to train Vega are conclusory. Further, it is not plausible that Vega's decision to sexually abuse the child was the result of a lack of training. *See, e.g., R.A. v. City of New York*, 206 F. Supp. 3d 799, 803 (E.D.N.Y. 2016) ("The complaints against Defendant Avalos show a conscious decision by Defendant Avalos to commit sexual assault, which does not present a 'difficult choice' for which further training would prevent."); *see also, Noonan v. City of New York*, No. 14CV4084-LTS-JLC, 2015 WL 3948836, at *4 (S.D.N.Y. June 26, 2015) ("Plaintiff pleads no facts indicating a pattern or history of officer misconduct. Unless such a history can be demonstrated, the Second Circuit requires a showing that the alleged violation of rights was the product of a

_____

School District conducted any investigation into the accusations made against Vega." However, neither the memo of law nor the attorney affirmation specifically states that the FOIL demands asked the District to provide evidence of any investigation into the criminal charge again st Vega in 2013. More importantly, though, both the memo and affirmation are matters outside of the pleadings, which the Court cannot consider on Rule 12(b)(6) application. The Amended Complaint itself asserts no such facts.

[23]*Compare, H.H. v. City of New York*, No. 11-CV-4905 (NG) (ST), 2017 WL 3396434, at *8 (E.D.N.Y. Aug. 7, 2017) ("[T]he Second Circuit has held that where a 'city's efforts to evaluate ... claims [are] so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims.' *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986). Thus, in *Fiacco*, the Circuit found that, since the plaintiff proffered evidence that complaints against officers were not adequately investigated, 'the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers' were committing violations. *Id*. at 328.").

'difficult choice of the sort that training or supervision would make less difficult' and that, if made incorrectly, '[would] frequently cause the deprivation of a citizen's constitutional rights.' *Walker* [*v. City of New York*], 974 F.2d [293,]297–98 [(2d Cir. 1992)]. The decision to commit a sexual assault—a blatantly criminal act—cannot reasonably be seen as posing the type of "difficult choice" contemplated by the Second Circuit in *Walker*.").

For all of the foregoing reasons, the Amended Complaint fails to plausibly plead municipal liability under § 1983 as against the School District or School Board. Accordingly, the § 1983 claims against the School District and School Board are dismissed.

*The Eleventh Cause of Action Fails to State a Claim*

Since the Court has found that the pleading fails to state a basis to impose supervisory liability or municipal liability, it does not consider all of Movant's alternative arguments directed at the § 1983 claims in Counts I, II or III. The Court notes, however, that Count XI also fails to state a claim.

The Eleventh Cause of Action purports to state a claim under § 1983 for "violation of state rights." In particular, the claim asserts that "the School Defendants" "violated [the child's] rights under New York's Dignity for All Students Act" ("DASA"). Movants contend that this cause of action fails to state an actionable claim for various reasons, including that DASA does not provide a private right to sue. In response to the motion to dismiss this claim, Plaintiffs respond that they were attempting to assert a due process violation claim, based upon the denial of a "liberty interest" provided by DASA.[24]

Preliminarily, courts in this Circuit have held that there is no private right to sue under DASA. *See, Benacquista v. Spratt*, 217 F. Supp. 3d 588, 602 (N.D.N.Y. 2016) ("[A] small-but-growing body of state and federal court decisions have evaluated the criteria for

---

[24] *See*, Pl. Memo of Law [#18] at p. 18 ("School Defendants misread Plaintiff's § 1983 claim for violation of state rights. The basis of the Plaintiffs' state rights claim is that, through DASA, New York has created a liberty interest in students to be protected from sexual harassment in school and that School Defendants deprived [the child] of this liberty interest without due process of law.").

inferring an implied private right of action in the context of DASA and determined there is no such right to sue.") (collecting cases).

Moreover, the Eleventh Cause of Action does not plausibly plead a federal due process claim. The claim clearly asserts that it is for "violation of state rights," namely violation of the child's rights under DASA, such as "the right as a student to be protected from intimidation and harassment," and the right to "an atmosphere that promoted emotional security." Glaringly, there is no mention of a "liberty interest" having been created under DASA, no mention of a liberty interest having been taken, and no mention of a lack of due process.[25] The cause of action therefore does not give fair notice of the type of claim that Plaintiffs now contend that they were attempting to assert.[26] Count XI refers only to a violation of a state statute, and "[i]t is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief." *Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984) (*citing Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *see also, Milton v. Valley Stream Cent. High Sch. Dist.*, No.

_____

[25] *See*, Amended Complaint [#13] at ¶¶ 49, 51-66, 216-223. Although the Court has already denied Plaintiffs' request to file a Second Amended Complaint, it notes that the Eleventh Cause of Action in the proposed Second Amended Complaint also makes no mention of DASA creating a liberty interest or of a due process violation. Even if Plaintiffs had given adequate notice that the Eleventh Cause of Action was attempting to assert a due process claim, the Court is not aware of any authority indicating that DASA (Education Law § § 10-18) creates a "liberty interest" in avoiding sexual harassment. *Cf.*, *Handberry v. Thompson*, 436 F.3d 52, 71-73 (2d Cir. 2006) (Indicating that while New York Education Law § 3202(1) creates a *property* interest in a free appropriate public education, not every section of the Education Law creates a property interest.)

[26] Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint give the defendant "fair notice" of the claims being asserted. *See, Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."). Indeed, "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). If a complaint fails to provide the defendant with a fair understanding of the plaintiff's claims, or otherwise prejudices the defendant, it should be dismissed under Rule 8(a). *See, Green v. City of Mount Vernon,* 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial. . . . Thus, courts will not dismiss a complaint . . . unless the complaint's form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint.") (citations omitted).

15-CV-0127(JS)(AKT), 2018 WL 1136909, at *10 (E.D.N.Y. Mar. 1, 2018) ("The District's alleged violations of its own policies or DASA cannot establish a constitutional violation. Thus, the failure to adhere to established policy claim under Section 1983 is dismissed."). Therefore, Count XI must alternatively be dismissed for failure to state an actionable claim.

<u>Title IX</u>

Counts IV and V of the Amended Complaint assert claims against the School District under Title IX, 20 U.S.C. § 1681 *et seq.*. Count IV alleges "harassment" under Title IX, on the theory that Vega discriminated against the child because of her sex, by sexually assaulting her and thereby creating a "sexually hostile environment" toward her at school, and that the School District was "recklessly indifferent to the fact and existence of the risk of harm" to the child."[27] Count V is essentially a continuation of, and duplicative of, Count IV, in that it merely reiterates that the School District failed to remedy Vega's harassment.

Movants contend that both Counts IV and V fail to state actionable claims. In pertinent part, Movants state:

> Only actual notice by an appropriate person who can rectify a violation of Title IX can support a Title IX claim because liability cannot be based on constructive notice or circumstances not actually known to a defendant, even if he or she reasonably should have known about them. In other words, it must be shown that there was an official decision by the school not to remedy the situation. Moreover, the conduct that allegedly put the administration on notice and the conduct ultimately at issue must be sufficiently similar to find liability. . . . [T]he elements of actual notice and deliberate indifference are insufficiently pled. Additionally, . . . the Amended Complaint is insufficient to permit an inference that the District had a policy and/or custom of discrimination based on sex and/or disability.[28]

---

[27]Amended Complaint [#13] at ¶ 163.

[28]Movants' Memo of Law [#14-4] at pp. 14, 16.

Plaintiffs respond that Movants have misstated the law, since there is no requirement that the School District have had "actual prior notice of the specific harassment of [the plaintiff Child] *by Vega*."[29] Although, as can be seen, that is not what Movants actually asserted; rather, Movants were referring to notice of the 2013 incident. In any event, Plaintiffs admit that for liability to exist under Title IX, School officials must at least have actual knowledge of an employee's "potential to abuse a student."[30] In that regard, Plaintiffs contend that "the School District was aware that Vega had a proclivity for harming children," due to the criminal charge filed against him in 2013.[31]

The general legal principles applicable to Title IX sexual harassment claims are clear:

> Title IX provides a remedy to a student who is subjected to sexual harassment by a teacher or professor at an educational institution receiving federal funds. For an educational facility to be liable, however, the plaintiff must establish that a school official with authority to address the alleged discrimination and to institute corrective measures had actual knowledge of the discrimination and failed to adequately respond. A school fails to adequately respond if it provides no response or if it provides a response that amounts to deliberate indifference to discrimination. The school's response to sex discrimination must be clearly unreasonable in light of known circumstances.

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88–89 (2d Cir. 2011) (citations and internal quotation marks omitted). "Constructive knowledge is not enough; only actual knowledge is a predicate to liability." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012).

---

[29]Pl. Memo of Law [#18] at pp. 20-21.

[30]Pl. Memo of Law [#18] at p. 21.

[31]Pl. Memo of Law [#18] at pp. 21-22.

In connection with the instant motion to dismiss, there is no dispute that Vega created a sexual hostile environment, or that the School District receives federal funds. It is also undisputed that the School District took no action against Vega, following the 2013 criminal charge, to keep him away from students, apart from temporarily suspending him. Accordingly, the issue is whether the Amended Complaint pleads that the School District had notice of Vega's propensities sufficient to warrant the imposition of liability under Title IX. On this point, the pleading does not contend that the School District was deliberately indifferent toward the Child after it received notice that Vega had sexually assaulted her; rather, the pleading alleges that the District was deliberately indifferent prior to the sexual assault, during the period after school officials learned that Vega had been charged with Endangering the Welfare of a Child in 2013.

"Generally, cases that hold a school responsible for pre-assault deliberate indifference involve actual knowledge of sexual assault(s) committed in a particular context or program or by a particular perpetrator or perpetrators." *Tubbs v. Stony Brook Univ.*, No. 15 CIV. 0517 (NSR), 2016 WL 8650463, at *9 (S.D.N.Y. Mar. 4, 2016) (collecting cases). "[T]he prior harassment about which the [school] had knowledge must have been sufficiently similar to the harassment about which [the] plaintiff complains" in the federal lawsuit. *Wyler v. Connecticut State Univ. Sys.*, 100 F. Supp. 3d 182, 190 (D. Conn. 2015).

> Title IX liability does not attach simply because a school "should have known" about sexual abuse, and actual notice also requires more than a simple report of inappropriate conduct by a teacher. Clearly, the institution must have actual knowledge of at least some incidents of harassment in order for liability to attach, and at minimum must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address *the kind of harassment* upon which plaintiff's legal claim is based.

> But most courts agree that on the other hand, the actual notice standard does not set the bar so high that a school district is not put on notice until it

44

receives a clearly credible report of sexual abuse from the plaintiff-student. As one district court has stated, at some point between these poles a supervisory school official knows, or it should be obvious to him or her, that a school employee is a substantial risk to sexually abuse children. Most federal courts appear to agree that the "actual knowledge" need only be of facts indicating that the teacher has the potential to abuse a student.

Whether complaints unsubstantiated by corroborating evidence and denied by the allegedly offending teacher did or should have put a school district on notice of a teacher's substantial risk to students is usually a question for the jury.

*Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005) (italics added; citations and internal quotation marks omitted).

However, a plaintiff does not get to discovery, let alone to a jury, without first pleading a plausible claim. *See, Ashcroft v. Iqbal*, 129 S.Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. [Rather,] only a complaint that states a plausible claim for relief survives a motion to dismiss.").

Here, for the same reasons already discussed in connection with the § 1983 claims, the Amended Complaint does not plausibly plead that anyone at the School District, in a position to prevent sexual abuse by Vega, had actual notice of any prior sexual misconduct by him. Once again, Plaintiffs cannot rely simply upon the fact that Vega was charged in 2013 with the crime of Endangering the Welfare of Child, where the underlying facts of that charge are unknown, and where no reasonable inference can be drawn that the charge involved sexual misconduct. At most, Plaintiffs are relying upon the sheer possibility that discovery may eventually provide a link between the 2013 criminal complaint and the 2014 sexual assault. However, such possibility is insufficient to defeat a motion under Rule

12(b)(6).  Therefore, the Amended Complaint fails to plead plausible claims under Title IX, and Counts IV and V are dismissed.

<u>Rehabilitation Act and ADA</u>

Count VI of the Amended Complaint purports to state a state under § 504 of the Rehabilitation Act for discrimination against the School District.  Count VII of the Amended Complaint purports to assert a discrimination claim under the ADA against the School District.  In both claims, Plaintiffs assert that the District discriminated against the child by failing to provide her with safe transportation.  For example, the § 504 allegations state, in pertinent part:

> The District discriminated against [the child] and denied her the equal benefits of her educational program and the programs and services offered by the District, by failing to provide her with a safe, appropriate, and properly supervised educational program, including a failure to provide . . . safe and properly supervised transportation ultimately causing the abuse [committed by Vega].
>
> [The Child] was deprived of the equal benefits of her program, and otherwise subject to discrimination, because of her disabilities.  Defendants acted with bad faith, used gross misjudgment, and/or were deliberately indifferent to [the child's] rights.[32]

The pleading asserts that "Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time."[33]

Movants contend that Counts VI and VII fail to state actionable claims, and therefore must be dismissed.  In particular, Movants maintain that the pleading fails to plausibly plead that the child has a qualifying disability within the meaning of § 504 or the ADA.  On this point, Movants contend that although the pleading asserts that the child has a learning

---

[32]Amended Complaint [#13] at ¶ ¶ 188-189.

[33]Amended Complaint [#13] at ¶ 180.

disability, "[t]he Amended Complaint does not contain any allegations identifying what significant learning disabilities [the child] had and how and/or in what way they were impacted by the Defendants by reason of her disability."[34]  Movants further maintain that to the extent that Plaintiffs are claiming "disparate impact and/or disparate treatment, i.e., that [the Child] was allegedly deprived of the equal benefits of her program,"  "there are insufficient factual allegations from which to plausibly infer disparate treatment and/or a disparate impact."[35]  Notably, in that regard, Movants argue that "[t]he allegations contained in paragraphs  68 through 92 and throughout the Amended Complaint are the same allegations that would be made by a student without a disability.  However, a student without a disability would not have a cause of action under the Rehabilitation Act or the ADA and therefore, neither do Plaintiffs."[36]

Plaintiffs respond that the District violated the Child's IEP, by allowing her to be transported by Vega:

> [The Child's] IEP required that she receive services from the BOCES program, for which the School District had to provide transportation.  The School District failed to implement this requirement by putting [the Child,] alone and unsupervised, on a bus with Vega, a person with a known proclivity for harming children.[37]

Plaintiffs expand upon this idea by stating:

> The Rehabilitation Act and ADA claims in the present case have nothing to do with [the Child's] classification or the adequacy of the educational services provided by her IEP.  Rather, the claims are based on the fact that [the Child], as a student with a learning disability, was physically assaulted

---

[34]Movants' Memo of Law [#14-4] at p. 19.

[35]Movants' Memo of Law [#14-4] at p. 20.

[36]Movants' Memo of Law [#14-4] at p. 20.

[37]Pl. Memo of Law [#18] at p. 23.

because she was required to be alone on a school bus with a person who the School Defendants[38] knew had a proclivity for harming children.[39]

Plaintiffs further contend that to the extent the District claims it was unaware of Vega's dangerous propensity to commit sexual abuse, that is only because the District failed to investigate the criminal charge made against Vega in 2013.[40]  Plaintiffs also maintain that the Amended Complaint adequately pleads that the child has a qualifying disability, which is a "learning disability" that affects the major life activity of "learning."[41]

The legal principles generally applicable to these claims are, as the parties acknowledge, the same:

> [T]he Rehabilitation Act and Title II of the ADA have generally equivalent requirements for claims, such that claims under those statutes are analyzed together.  As such, to establish a prima facie violation of either statute, a plaintiff must show (1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, *by reason of her disability*.

*D.K. by L.K. v. Teams*, 260 F. Supp.3d 334, 368 (S.D.N.Y. 2017) (emphasis added; citations omitted).  One difference between the two statutes is that, "under the Rehabilitation Act, the defendant must have discriminated against the plaintiff 'solely' because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp.2d 292, 314 (W.D.N.Y. 2003), *aff'd*, 106 F. App'x

---

[38]This reference to "School Defendants" is inconsistent with the headings of Counts VI and VII, which state that the claims are being asserted only against the School District.

[39]Pl. Memo of Law [#18] at p. 24.

[40]Pl. Memo of Law [#18] at p. 22, n. 6.

[41]Pl. Memo of Law [#18] at p. 26.

746 (2d Cir. 2004).

The Court agrees with Movants that the Amended Complaint fails to plausibly plead discrimination *because of disability*. That is, the Court cannot see how it has been plausibly pled that the Child's learning disability was a factor, let alone a motivating factor or sole cause, of either the sexual abuse by Vega or of the School District's alleged failure to protect the Child from Vega. The Child happened to be transported by Vega because she was attending a program at a nearby BOCES facility. The Amended Complaint indicates that the Child was receiving some type of services at BOCES connected to her learning disability.[42] However, it is a fact that many, if not most, of the students who attend BOCES programs are not disabled. Moreover, many, if not most, students with IEPs do not attend BOCES programs. No reasonable inference can be drawn that a child being transported to BOCES is disabled. More importantly, there is no plausible allegation in the pleading that the Child was targeted for sexual abuse because of her alleged disability, nor is there any such allegation that the School District had reason to think that Vega was more likely to harm a disabled child than a non-disabled child, or that it allowed Vega to drive disabled students but not non-disabled students. The fact that something bad happened to a student with an IEP, without more, does not establish a violation of the ADA or § 504.

In sum, the Amended Complaint does not plead actionable discrimination on the basis of disability, because even assuming that the child qualifies as disabled under the ADA and Rehabilitation Act, such fact appears to be entirely coincidental to the sexual abuse by Vega, and to the School District's alleged failure to protect her. *See, Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 196 (D. Conn. 2016)("[T]he amended

---

[42]*See*, Amended Complaint [#13] t ¶ 93 ("During the 2014-2015 school year, becuse of Jane Doe's status as a special needs student with an IEP, Jane Doe was required to attend a [BOCES] program on a daily basis.").

complaint is devoid of non-conclusory allegations that the bullying of Doe was based on his disability. . . . Doe does not sufficiently allege, however, that anyone actually harassed, bullied, or assaulted him because of his disability or perceived disability, rather than some other reason, such as personal animus."), reconsideration granted in part on other grounds, No. 3: 15-CV-00452 (MPS), 2016 WL 6821061 (D. Conn. Nov. 17, 2016); Spring v. *Allegany-Limestone Cent. Sch. Dist.*, 2017 WL 6512858, at *7 ("With respect to the majority of the School Defendants, Plaintiffs make no allegation that they were aware of the bullying, or at least aware that it was related to Gregory's disability. . . . [Although it was reported to the School Defendants that Gregory was being bullied and harassed,] there is nothing linking [such] report to Gregory's disability. Accordingly, the [ADA and Rehabilitation Act] claims must be dismissed as to these Defendants."); *Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, No. 14 CIV. 1729 (ER), 2016 WL 5799407, at *7 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff has not raised a plausible inference that the difficulties she faced at Mandl were the result of discrimination on the basis of her PTSD. Plaintiff asserts that she was subjected to an orchestrated campaign of harassment on and off school grounds, which manifested itself primarily in other students calling her a 'kook' and 'coo coo.' However, the Amended Complaint is completely devoid of any allegations as to how Plaintiff's PTSD manifests. The Court cannot, therefore, discern even a minimal inference that Plaintiff's harassment was directed at her disability. Even if students with disabilities are more likely to be bullied than students without disabilities, both based on their disabilities and based on other factors, a plaintiff nevertheless does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying.") (citations and internal quotation marks omitted).[43] Plaintiff's ADA and

---

[43] *Compare, Doe ex rel. Doe v. Darien Bd. of Educ.*, 110 F. Supp. 3d 386, 406 (D. Conn. 2015) ("[T]o the extent the District had notice of the abuse and failed to act to stop it, a reasonable jury could find that the District's failure to act was *because of* John's disability.") (emphasis added; explaining that school officials disbelieved disabled student's report of abuse because his mental disability made him

Rehabilitation Act are therefore dismissed.

<u>Negligent Inflication of Emotional Distress</u>

Count XII of the Amended Complaint purports to state a claim for negligent inflication of emotional distress ("NIED"), under New York State law, against the School District, School Board, Allen, Abbot, Oberst and Callon. The claim asserts that Movants had a duty to protect the child, and to provide her with safe transportation, and that they breached that duty by "extreme and outrageous conduct."[44] The crux of the claim is the following assertion:

> The Board and School Defendants' conduct unreasonably endangered Jane Doe's physical safety and caused Jane Doe and [her parents,] D. Doe and C. Doe to fear for Jane Doe's physical safety.

Amended Complaint [#13] at ¶ 232.

Movants contend that Count XII fails to state a claim against any one of them, because it impermissibly groups them together and fails to state what any of them individually allegedly did. Movants further contend that the pleading fails to allege extreme and outrageous conduct. Finally, Movants contend that the pleading fails to plead a "causal link element."[45] On this point, Movants argue that the pleading fails to plausibly allege that they had notice of Vega's dangerous propensity to commit a sexual crime against a child.[46]

Plaintiffs respond that Count XII is intended to assert an NIED claim "under the

---

an unreliable historian).

[44] Amended Complaint [#13] at ¶ 233.

[45] Def. Memo of Law [#14-4] at p. 21.

[46] Def. Memo of Law [#14-4] at pp. 22-23 (The section of Movants' memo discussing negligent inflication of emotional distress (pp. 20-21) incorporates the causation discussion from the section discussing the negligence claim in Count XIII.

'direct duty' theory," which, they assert, "generally requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused him to fear for his own safety."[47]  Plaintiffs contend that extreme and outrageous conduct is not required to establish such a claim.[48]  Plaintiffs maintain that the pleading states an actionable NIED claim because it asserts that Movants had a duty to protect the Child, and breached those duties when they "deliberately chose not to monitor or supervise Vega, and placed [the Child] alone and unprotected on the bus with Vega, even though they knew of his proclivity for engaging in conduct harmful to children."[49]  In that regard, Plaintiffs assert that the Amended Complaint plausibly pleads that Movants had notice of Vega's dangerous propensity, because it

> specifically alleges that the School Defendants were aware that Vega had a propensity for engaging in conduct in a manner injurious to young children; that Vega was accused of engaging in such conduct and he was also arrested and criminal charges were filed against him for engaging in such conduct; and this conduct was reported to some [of] the School Defendants; further as the School Defendants decided to suspend Vega, then all of the School Defendants had to have been aware of the conduct as of the time of Vega's suspension.

Pl. Memo of Law [#18] at p. 28, n. 9 (citations omitted).

As for the law applicable to NIED claims under New York law, the United States Court of Appeals for the Second Circuit has indicated that

> [u]nder New York law, a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory."  Under the "bystander" theory, . . .  a defendant's

---

[47]Pl. Memo of Law [#18] at p. 26.

[48]The Court agrees with this statement. *See, Ben v. United States*, 160 F.Supp.3d 460, 484 (W.D.N.Y. 2016) (Explaining that New York law does not require extreme or outrageous conduct to support an NIED claim).

[49]Pl. Memo of Law [#18] at p. 27.

> conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence.

> Under the "direct duty" theory, a plaintiff suffers emotional distress caused by defendant's breach of a duty which unreasonably endangered plaintiff's own physical safety.

*Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (citations and internal quotation marks omitted). From this, the Court notes, preliminarily, that since Plaintiffs are asserting a "direct duty theory" claim, there is no basis for recovery by the child's parents, D. Doe and C. Doe, because there is no allegation in the Amended Complaint that they were put in fear for their own safety. Accordingly, the NIED claim is dismissed insofar as it is being asserted by D. Doe and C. Doe.

Insofar as the claim is being asserted on behalf of the Child, the Court agrees with Movants that Count XII otherwise fails to state an actionable claim. Although Plaintiffs' response to the motion to dismiss purports to identify factual averments in the pleading which show that Movants had notice of Vega's propensity to harm children, those averments are, as already explained, mere bare allegations or conclusions, unsupported by facts. In sum, Plaintiffs argue that knowledge that an employee was charged with a crime, involving endangering the physical, mental or moral welfare of a child (the facts of which are not stated) amounts to notice of the employee's dangerous propensity to physically harm, and, in particular, to sexually assault, children. The Court disagrees. The Amended Complaint does not plausibly allege which of the individual Movants, if any, specifically received notice of the criminal charges against Vega; does not allege the facts of the criminal charge; and does not allege that Vega was convicted of the charge. Nor

does the pleading allege facts indicating that Vega actually harmed a child in 2013, despite the lack of a conviction, or that a better investigation would have uncovered such information.  The mere fact that someone is charged with Endangering the Welfare of Child under New York Penal Law § 260.10 does not create a reasonable inference that such person actually has a propensity to physically harm children at all, let alone to commit sexual abuse.

<u>Respondeat Superior Liability</u>

Count XIV of the Amended Complaint purports to assert a claim against the School District and School Board, under New York State common law, for "respondeat superior liability" for Vega's torts against the child.  On the last page of their memo of law, Plaintiffs announce, in a footnote, that they are withdrawing this claim.  That is understandable, since it is quite clear that under New York law there is no respondeat superior liability for an employee's sexual misconduct, since such wrongdoing is outside the scope of one's employment. *See, Benacquista v. Spratt*, 217 F. Supp.3d at 604 ("As other courts have noted, this *de facto* bar to vicarious liability in sexual assault cases exists because that sort of misconduct is a clear departure from the scope of employment, having been committed for wholly personal motives.") (citation and internal quotation marks omitted); *see also, Noonan v. City of New York*, 2015 WL 3948836, at *7 ("Because Plaintiff's alleged injuries stem from the sexual assault by Officer Becker, and because New York courts have consistently held that sexually motivated conduct falls outside the scope of employment, Plaintiff fails to state a claim based on a respondeat superior theory of liability."); *Doe v. City of New York*, 2013 WL 796014, at *5 ("Sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context.  Rape and sexual assault are not within the scope of a police officer's employment.  Moreno and Mata's misconduct was motivated

by selfish interests and not a desire to do their master's work. Thus, liability cannot be imposed under respondeat superior.") (footnotes and internal quotations omitted).

This being such a well-settled point of law, it is mystifying as to why Count XIV was included in both the Complaint and Amended Complaint. *See*, Fed.R.Civ.P. 11(b). But in any event, Count XIV of the Amended Complaint clearly fails to state a respondeat superior claim against the School District or School Board, and is dismissed.

Negligence

Count XIII of the Amended Complaint purports to assert a claim for negligence under New York law against the School District, School Board, Allen, Abbott, Oberst and Callon. The gist of the claim is that the defendants were negligent in hiring, training, retaining and supervising Vega.

Movants maintain that Count XIII generally fails to state a claim for negligence because it does not allege that they had notice of Vega's propensity to commit sexual misconduct against a student. Movants also maintain that the claim fails to differentiate between the various defendants, or to plead plausible claims against the individual defendants.

Plaintiffs respond that Movants had notice of Vega's dangerous propensity to harm children, due to the fact that he had been charged with Endangering the Welfare of Child.[50] Alternatively, Plaintiffs contend that even if Movants did not have notice of Vega's propensity, the sexual assault of the child was nevertheless a foreseeable result of allowing a bus driver to be alone with a student on a bus.[51]

---

[50]Pl. Memo of Law [#18] at p. 28 ("School Defendants were aware of Vega's propensity for engaging in conduct harmful to children, and even though they were aware of the accusations [sic] against him and criminal charges [sic] against him, they reinstated him to his position without conducting any investigation into the accusations.").

[51]Pl. Memo of Law [#18] at p. 32 ("[T]he School Defendants put [the child] in a situation where she was alone and unsupervised with Vega.").

The Court has previously described New York law concerning negligent hiring, training and supervision, as being that

> where the acts of employees are concerned, an employer . . . may be held directly liable for negligent hiring, retention, or supervision' for acts committed outside that scope. . . . [However, because an employer is vicariously liable for torts committed by an employee within the scope of his employment,] the only time a claim for negligent retention, training or supervision makes sense is when an employee tortiously injures someone while acting outside the scope of his employment, and the injured party cannot hold the employer vicariously liable in respondeat superior for the employee's tort, but may be able to hold the employer liable for its own negligence in retaining, training or supervising the employee.

*Ben v. United States*, 160 F. Supp. 3d 460, 476–77 (N.D.N.Y. 2016) (citations and internal quotation marks omitted) (Siragusa, J. as acting Judge of N.D.N.Y.).  The instant case fits within that category, since Vega was clearly acting outside the scope of his employment when he assaulted the Child, and Plaintiffs cannot hold the School District vicariously liable, as discussed earlier.

For the same reasons discussed earlier, Count XIII fails to state a claim for negligent hiring,[52] training, retention or supervision of Vega, insofar as it is based on Defendants' negligence with regard to Vega's propensity to commit a sexual assault against a student.  Under New York law, "[a]n essential element of a cause of action for negligent hiring and retention is that the employer knew, or should have known, of the employee's propensity for the sort of conduct which caused the injury." *Sheila C. v. Povich*, 11 A.D.3d 120, 129–30, 781 N.Y.S.2d 342, 350 (2004).  In terms of how specific the notice must be concerning "the *sort of conduct* which caused the injury," New York law is not entirely clear whether an employer must have notice of the employee's propensity to commit the exact

---

[52]Although the pleading at times refers to "negligent hiring," it actually offers no reason to think that the School Defendants were negligent in hiring Vega.  Plaintiff's claims are based upon events that occurred after Vega was hired, and do not refer to anything that happened prior to his hiring.

same type of misconduct that was later committed against the plaintiff. However, the employer must at least have notice of the employee's propensity to commit the general type of injury. For example, an employer may be liable for a sexual assault committed by the employee, even if it was only aware that the employee had a propensity to commit physical assaults generally. However, an employer will not be liable for an employee's sexual assault if it was not even aware that the employee had a propensity to commit physical assaults generally. *See, Doe v. Montefiore Med. Ctr.*, No. 14-1124, 598 F. App'x 42 (2d Cir. Mar. 17, 2015) ("New York law appears to take differing approaches relating to foreseeability in cases alleging that sexual assault by an employee was foreseeable to the employer. In some cases, the plaintiff must offer evidence that the employer knew (or should have known) of the employee's propensity to engage in inappropriate sexual conduct. In other cases, the plaintiff has been required to show only that the employer knew (or should have known) of the employee's propensity to engage in physical assault, whether or not such conduct was of a sexual nature. We need not decide this issue here. The district court correctly determined that, on this record, no reasonable jury could conclude that defendants knew or should have known of Dr. Saulle's propensity to commit an assault-let alone a sexual assault.") (citations omitted).

Here, the Amended Complaint attempts to rely upon the fact that Vega was accused of some unspecified type of misconduct that could have resulted in harm to the physical, mental or moral welfare of a child.[53] The pleading does not plausibly indicate that Vega's

---

[53] As already discussed, in claiming that Movants had notice of Vega's propensity to commit a sexual assault against a student, they rely upon the fact that Vega had been charged with committing some type of crime involving a risk of harm to a child. However, "a court faced with a negligent supervision/retention claim should not consider the employee's conduct at the highest level of generality." *Doe v. Montefiore Med. Ctr.*, No. 12 CIV. 686 CM, 2013 WL 624688, at *4 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42 (2d Cir. 2015).

prior conduct involved a physical assault against a child, let alone a sexual assault.[54]

Accordingly, the pleading fails to adequately plead that Movants had the requisite notice, of Vega's propensity to commit a physical assault against a student, that would be required to maintain a claim for negligent training, retention or supervision. *See, Steinborn v. Himmel*, 9 A.D.3d 531, 533–34, 780 N.Y.S.2d 412, 415–16 (3d Dept. 2004) ("[P]laintiffs point to Himmel's practices of drinking beer and smoking cigarettes in front of the boys, and rely on evidence that he occasionally offered some of them cigarettes. Evidence also exists that Himmel provided alcohol to plaintiffs and other boys and encouraged them to drink. Even assuming defendants were aware of Himmel's alleged improper use of alcohol and cigarettes [(either of which would have violated New York Penal Law § 260.10)], we find these allegations, although relevant to Himmel's qualifications as a scout leader, insufficient as a matter of law to constitute notice to defendants that there was a danger of Himmel sexually assaulting plaintiffs.").

Moreover, since Plaintiffs have no idea why Vega was charged with endangering the welfare of a child, and since there is no indication that he actually was guilty of the crime, the pleading cannot plausibly maintain that Movants' alleged negligence in failing to investigate the charge proximately caused the child's injury. *See, Koran I. v. New York City of Bd. of Educ.*, 256 A.D.2d 189, 191–92, 683 N.Y.S.2d 228, 230 (1998) ("Whether

---

[54] In *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004), the Second Circuit used language indicating that an employer's knowledge that an employee had been *accused* of prior sexual misconduct would be sufficient to establish that the employer knew or should have known of the employee's propensity to commit later sexual misconduct: "[T]he district court found that Ehrens failed to adduce evidence sufficient to [establish that the employer knew or should have known of the employee's propensity to commit the type of conduct that injured the plaintiff]. We agree. In response to Ehrens's first set of interrogatories, the defendants indicated that prior to July 1997, when the New England District received a letter from Ehrens's former counsel, they were unaware that Chapman had ever engaged in, *or been accused of engaging in*, sexual misconduct. Ehrens, for his part, failed to counter this assertion with admissible evidence from which a reasonable juror could infer that the defendants, at any time prior to the relevant incident, knew or should have known of Chapman's propensity to assault minors or otherwise to engage in inappropriate sexual conduct. The district court therefore properly awarded summary judgment to the defendants on Ehrens's negligence claims, all of which he premised on a theory of negligent retention or supervision." However, the instant case is even farther removed, because here, Plaintiffs cannot even plausibly maintain that Movants were aware that Vega had previously been accused of physically harming a child, let alone sexually assaulting a child.

or not the principal could have been more thorough in checking Harpes' background, his actions do not support a claim of negligent hiring because a routine background check would not have revealed his propensity to molest minors. *Plaintiff points to nothing which would have been revealed by checking Harpes' criminal history*.") (citations omitted, emphasis added).

Plaintiffs nevertheless maintain that Movants were negligent to allow the child to be transported alone with Vega, regardless of whether there was any reason to think that Vega was likely to sexually assault her. In this regard, Plaintiffs contend that Movants were negligent in supervising the child.[55] Essentially, Plaintiffs seem to argue that Movants created a dangerous situation simply by allowing a student to be alone with an adult school employee, because it was foreseeable that the employee might harm the student.[56] On this point, Plaintiffs rely upon cases including *Bell v. Bd. of Educ. of the City of New York*, 90 N.Y.2d 944, 946 (1997) ("*Bell*") and *Murray v. Research Foundation of State Univ. of New York*, 283 A.D.2d 995, 996 (4th Dept. 2006) ("*Murray*").

The Court does not agree with Plaintiffs that they have adequately pleaded a negligence claim simply by asserting that the School should not have allowed the child to be alone with Vega on a school bus. The law on this point has been stated as follows:

'A person, other than a parent, who undertakes to control, care for, or supervise an infant, is required to use reasonable care to protect the infant over whom he or she has assumed temporary custody or control. [While a person caring for entrusted children is not case in the role of an insurer, s]uch an individual is obliged to provide adequate supervision and may be held liable for foreseeable injuries proximately resulting from the negligent failure to do so.' *Appell [v. Mandel*], 296 A.D.2d [514,] 514, 745 N.Y.S.2d 491

---

[55]Pl. Memo of Law [#18] at p. 29 ("School Defendants also breached their duty to adequately supervise [the child]."); *see also, id*. at pp. 30-32.

[56]Pl. Memo of Law [#18] at p. 32 ("[T]he School Defendants put [the child] in a situation where she was alone and unsupervised with Vega.").

[(2d Dept. 2002)]. However, where a claim of negligence is brought against a party based on a failure to protect a minor against alleged sexual assaults by a third party, the infant plaintiff must establish that the defendant "was provided with actual or constructive notice that such assaults might be made upon the infant plaintiff [so as to give rise to a duty to protect her]." *Jamal P. [v. City of New York*,] 24 A.D.3d 301, 303, 808 N.Y.S.2d 609 [(1st Dept. 2005)]. As explained in a case in which claims asserted against a school district based on a teacher's acts of sexual misconduct with a student were dismissed, "The harm posed by the teacher's proclivities to engage in inappropriate sexual conduct with students was not known or foreseeable at the time these incidents happened. Without such knowledge, there would have been no reason for a parent of ordinary prudence to prevent his or her child from meeting privately with the teacher during school hours...." *Mary KK. [v. Jack LL*,] 203 A.D.2d [840,] 842, 611 N.Y.S.2d 347 [(3d Dept. 1994)] (citation omitted).[57]

*A.B. v. Staropoli*, 929 F. Supp.2d 266, 290 (S.D.N.Y. 2013) (internal quotation marks omitted).[58]

---

[57]The plaintiff in *Mary KK* made essentially the same argument being made by Plaintiffs here, which is that the School District was negligent simply by virtue of allowing the student to be alone with the teacher. However, the court rejected that argument. *See, Mary KK.*, 203 A.D.2d at 349 ("*Plaintiff maintains that the District breached this duty by permitting the teacher to meet with the student behind locked doors.* We disagree. The harm posed by the teacher's proclivities to engage in inappropriate sexual conduct with students was not known or foreseeable at the time these incidents happened. Without such knowledge, there would have been no reason for a parent of ordinary prudence to prevent his or her child from meeting privately with the teacher during school hours, given the degree of trust reposed in teachers and the fact that such meetings are an integral part of the educational process.") (emphasis added).

[58]See also, *Doe ex rel. "Doe" v. New York City Dep't of Educ.*, 43 Misc. 3d 1221(A), 992 N.Y.S.2d 158 (Sup. Ct. 2014) ("[T]he standard of care a school owes to its students-as it relates to supervision-is the supervision and protection which a parent of ordinary prudence would observe in comparable circumstances. Hence, schools are under a duty to adequately supervise their students and are liable for foreseeable injuries which are proximately caused by the absence of such supervision. Stated differently, the duty to provide adequate supervision has been breached when school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated. Accordingly, the *sine qua non* to liability in any case alleging inadequate supervision is actual or constructive notice to the school of prior similar conduct. This of course, makes perfect sense insofar is it is beyond cavil that school personnel cannot reasonably be expected to guard against conduct, the likes of which, they were unaware and, therefore, likely to recur . Once on notice of prior dangerous conduct, a school is liable if it fails to provide the requisite degree of supervision to reasonably prevent harm. . . . In cases alleging inadequate supervision resulting in the intentional sexual abuse of a student in school's charge, liability requires a showing that defendant had prior knowledge or notice of the [perpetrator's] propensity or likelihood to engage in such sexually inappropriate conduct, so that the individual's acts could be anticipated or were foreseeable."), *aff'd sub nom. Doe v. New York City Dep't of Educ.*, 126 A.D.3d 612, 6 N.Y.S.3d 55 (1st Dept. 2015).

Once again, the Amended Complaint fails to plausibly allege that Movants had notice of Vega's propensity to sexually abuse a student. Accordingly, Count XIII is dismissed for failure to state a claim upon which relief can be granted.

CONCLUSION

Movant's application [#14] to dismiss the Amended Complaint is denied insofar as it is based upon Fed.R.Civ.P. 12(b)(1), but is granted in its entirety insofar as it is based upon Fed.R.Civ.P. 12(b)(6). All claims against the School District, School Board, Allen, Abbott, Oberst and Callon are dismissed with prejudice.[59] Vega, who has not moved to dismiss the Amended Complaint, is the sole remaining defendant. The remaining claims in this action are Count II insofar as it is asserted against Vega, and Counts VIII, IX and X which are asserted solely against Vega. By separate order the Court will refer this action to a United States Magistrate Judge, who will oversee discovery and other pretrial matters.

SO ORDERED.

Dated: Rochester, New York
        May 7, 2018                              ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

---

[59]*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)("[A] dismissal for failure to state a claim upon which relief can be granted is with prejudice.")